IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOEL HERNANDEZ MARTINEZ,           No. 2:16-CV-0101-CMK

    Plaintiff,

  vs.                                  MEMORANDUM OPINION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

          Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 21) and defendant's cross-motion for summary judgment (Doc. 33).

/ / /

/ / /

/ / /

1

# I. PROCEDURAL HISTORY

Plaintiff applied for supplemental security income social security benefits on August 30, 2011. In the application, plaintiff claims that disability began on July 1, 2003. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on March 21, 2014, before Administrative Law Judge ("ALJ") Mary M. French. In a July 23, 2014, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): diabetes, obesity, shoulder arthralgia, sleep apnea, restless leg syndrome, degenerative joint disease of the knees, plantar fasciitis, mood disorder, and anxiety;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: he can perform light work; he is able to lift up to 20 pounds occasionally and 10 pounds frequently; he can frequently climb, balance, stoop, kneel, crouch, and crawl; he can occasionally engage in contact with supervisors and co-workers; he is able to engage in no more than incidental contact with the public; and

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on November 13, 2015, this appeal followed.

# II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole,

including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III. DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ failed to properly analyze the medical opinions; (2) the ALJ erroneously relied on reports from Drs. Colon and Weesner; (3) the ALJ ignored relevant imaging studies; (4) the ALJ erred in rejecting plaintiff's statements as not credible; (5) the ALJ failed to provide adequate reasons for rejecting lay witness evidence; and (6) the ALJ failed to adjudicate plaintiff's Title II claim.

    **A.**    **Evaluation of Medical Opinions**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given

to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

In this case, the ALJ discussed the medical opinions as follows:

> As for the opinion evidence, the ultimate RFC in this case is based on the opinion of consultative orthopedist, Dr. Colon (Exhibit 25F). Dr. Colon's opinion is consistent with and supported by all of the diagnostic studies that confirmed only mild and normal results.

4

> Minimal evidentiary weight is accorded the opinion of Dr. Tendall who examined the claimant in April of 2012 (Exhibit 14F). While Dr. Tendall placed extreme limitations on the claimant's physical functioning, his opinion is not supported by the medical evidence or other physical examinations.
>
> Great evidentiary weight is accorded the State agency consultants Drs. Lochner and Weiss' analysis of the claimant's mental functioning (Exhibits 4A, 24F). The undersigned finds that the limitations caused by his severe mental impairments are consistent with the ultimate RFC in this case. Great evidentiary weight is accorded to Dr. Weesner's opinion in February of 2011. The doctor noted that the claimant was not honest and was exaggerating his symptoms (Exhibit 34F).
>
> The undersigned accords minimal evidentiary weight to the February 2012 opinion of Dr. Cross who found claimant virtually incapable of working based upon his mental condition (Exhibit 11F). Dr. Cross' opinion is diminished by Dr. Weesner's findings. . . .

According to plaintiff, the ALJ erred in the following ways with respect to analysis of the medical opinion evidence: (1) the ALJ ignored evidence from treating providers, Drs. Roth and Batin; (2) the ALJ erred by rejecting the report of examining psychologist, Kara Cross, Ph.D.; and (3) the ALJ erred by rejecting the report of examining physician, John Tendall, M.D.

            1.     Drs. Roth and Batin

Plaintiff argues that the record contains "progress notes, diagnoses, testing reports, and treatment records from two treating medical sources. . ." and that the ALJ erred by ignoring this evidence. Plaintiff identifies the following portions of the record relating to Dr. Roth: CAR 270-278, 308-313, 337-344, 407-414, 480-485, and 576-587.[1] As to Dr. Batin, plaintiff identifies a September 12, 2012, report, see CAR 467. According to plaintiff, the ALJ erred because she "engaged in no analysis of Dr. Roth's *diagnoses and treatment*. . . ." (emphasis added). Similarly, plaintiff contends that the ALJ erred because she "failed to properly consider the *diagnoses* of treating physician Dr. Batin. . . ." (emphasis added). Plaintiff has not, however, identified any opinions rendered by these doctors relating to plaintiff's functional capabilities,

---

[1] Citations are to the Certified Administrative Record ("CAR") lodged on February 17, 2017 (Doc. 14).

5

and a review of the cited portions of the record does not reflect any such opinions. Because Drs. Roth and Batin did not render any opinions, the ALJ did not err with respect to these doctors.

2. Dr. Cross

In its entirety, plaintiff's argument as to Dr. Cross is as follows: "The ALJ adopts the opinions of Dr. Weesner over Dr. Cross without providing anything more than the unequivocally legally inadequate boilerplate assertion that 'Dr. Cross' opinion is diminished by Dr. Weesner's findings.'" At the outset, the court cannot see how the ALJ's statement can be considered "boilerplate" given that it references specifics of the particular case, namely contradictory findings made by Dr. Weesner. In any event, the court finds no error. Here, Dr. Cross' opinion of an almost total incapacity to work is contradicted by numerous other doctors, including Dr. Weesner, who also examined plaintiff and who opined that plaintiff was exaggerating his symptoms.

3. Dr. Tendall

Plaintiff argues that the ALJ erred in favoring Dr. Colon's report over Dr. Tendall's later report. As to Dr. Tendall, the ALJ summarized his findings as follows:

> On April 12, 2012, consultative examiner, Dr. John Tendall, diagnosed the claimant with degenerative joint disease and possible degenerative disc disease in his neck and back. He also had degenerative joint disease in his knees. He was a non-insulin dependent diabetic. He has plantar fasciitis in his left feel. He also had questionable sleep apnea. Dr. Tendall assessed the claimant as able to stand and walk less then 2 hours. This limitation was due to his abnormal gait, coordination testing, straight leg raising, back exam, his left heel, decreased range of motion of his neck, back, hips, and knees. He could sit up to 4 hours for the same reasons. He did not need to use an assistive device. He could lift and carry 10 pounds occasionally and 10 pounds frequently. He could never perform any postural activities. He could frequently perform manipulative activities. He would be limited in working around heights and heavy machinery (Exhibit 14F).

According to plaintiff, the ALJ failed to make specific findings with respect to each of Dr. Tendall's opinions.

///

As discussed above, the ALJ rejected all of Dr. Tendall's opinions, stating: "While Dr. Tendall placed extreme limitations on the claimant's physical functioning, his opinion is not supported by the medical evidence or other physical examinations." The court agrees with plaintiff that this discussion is insufficient because the ALJ does not identify which specific opinions are not supported, nor does the ALJ identify what specific evidence contradicts any particular opinion expressed by the doctor. The ALJ's discussion of Dr. Tendall's opinion requires the court to guess in this regard and does not provide for meaningful judicial review. The matter will be remanded to allow the ALJ to properly consider Dr. Tendall's opinions.

**B.      Reports from Drs. Colon and Weesner**

Plaintiff argues that the ALJ improperly relied on medical reports from Drs. Colon and Weesner because they were admitted into the record post-hearing. Plaintiff also states that these reports were buried among hundreds of pages of other documents and that the court should strike the reports from the record as an appropriate sanction for what plaintiff characterizes as "bad faith discovery subterfuge." According to plaintiff, the ALJ's acceptance of these reports post-hearing violates the internal policy manual known as HALLEX (The Hearings, Appeals, and Litigation Manual).

Plaintiff's argument is unpersuasive. First, HALLEX is not judicially enforceable. See Lockwood v. Commissioner, 616 F.3d 1068 (9th Cir. 2010). Second, plaintiff was represented at the agency level and waived this issue by never raising an objection during the administrative process. See Meanel, 172 F.2d at 1115. Finally, because the reports from Drs. Colon and Weesner were part of the record relating to a prior application for benefits, the reports were not new and it is doubtful that plaintiff did not know of the reports or was blindsided somehow by their inclusion in the current record.

/ / /

/ / /

/ / /

C. **Imaging Studies**

Plaintiff argues:

> . . .[T]he ALJ engaged in what can only be called "cherry picking" as to radiological records. For example, the ALJ acknowledged that the April 26, 2011, x-rays showed "decreased joint space in medial and lateral compartments" but then stated that overall "there was no obvious abnormality" (AR 13). In truth, the radiological report also expressly found "mild sclerosis, moderate suprapatellar joint effusion" (AR 269). The ALJ noted that on November 5, 2008, Mr. Martinez "had a negative MRI of the cervical spine as well as his left knee" (AR 13); however, the ALJ entirely ignored the April 27, 2007, CT scan (AR 290) which showed small node deformity, mild bulging on L3-4, and moderate disc bulging at L4-5. This was not harmless error in his Step three analysis the ALJ claimed there was no "medically acceptable imaging of joint space narrowing" to Mr. Martinez's knees when in fact that is precisely what was shown in the April 26, 2011 (AR 269) and November 5, 2010, x-ray (AR 271), nor is harmless error for the ALJ to make no mention of the studies showing knee cysts (AR 292) and plantar fasciitis (AR 291).

1. April 26, 2011, X-Ray (CAR 269)

X-rays of the left knee revealed "decrease joint space in the medial and lateral compartments, worse medially." A "[m]ild subchondral sclerosis" was also observed in the tibial plateau. "A moderate suprapatellar joint effusion" was also noted. The doctor's impression of this study was that plaintiff had degenerative changes with a moderate suprapatellar joint effusion and "[n]o obvious bony traumatic abnormality identified." As to this study, the ALJ acknowledged these results and stated: "There was no obvious abnormality." The court does not see how the ALJ "cherry picked" from this study given that the ALJ accurately summarized the study's findings and the doctor's impression of those findings. Additionally, the ALJ's characterization of the April 26, 2011, x-rays is consistent with findings on an MRI of plaintiff's left knee conducted in November 2008, which was also negative.

/ / /

/ / /

/ / /

/ / /

8

1     2. April 27, 2007, CT Scan

  The record contains a portion of a report of a CT scan of plaintiff's lumbar spine conducted on April 17, 2007 (not April 27, 2007, as indicated by plaintiff). See CAR at 290. At the bottom of the single page of this report in the record appears the word "CONTINUED" but no additional pages to this report are in the record. While plaintiff is correct that this report study revealed mild and moderate bulging, no disc herniation or stenosis was noted. Further, absent the complete report, the ALJ did not have access to the doctor's impression of this report. Given that the report of this study is incomplete, it does not constitute substantial evidence. The ALJ did not err by ignoring this incomplete report. Moreover, as the ALJ noted, a cervical spine MRI conducted in November 2008 was negative. See CAR at 350.

    3. Studies Showing Knee Cysts and Plantar Fasciitis

  Plaintiff alleges that the ALJ erred by making "no mention" of studies at CAR 192 showing knee cysts or studies at CAR 291 showing plantar fasciitis. CAR 292 consists of the first page of a report of an MRI of plaintiff's left knee conducted on April 22, 2005. Plaintiff does not reference the second page of the report at CAR 293 where the doctor states his impression as follows: "I do not see any significant ligamentous injury or meniscal tear." CAR 291. CAR 291 consists of a report of a study of plaintiff's right and left feet conducted on June 2, 2005. As with the April 22, 2005, study of plaintiff's left knee, plaintiff does not mention that the doctor's impression of the 2005 study of his feet revealed no abnormalities. The court does not agree with plaintiff that the ALJ erred by failing to mention these studies, particularly given that they showed no abnormalities.

  **D.** **Plaintiff's Credibility**

  The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903

F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell, 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning

drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

Regarding plaintiff's statements and credibility, the ALJ stated:

> The claimant testified that he weighs 205 pounds. He has pain in his ribs and his back. He has anxiety and depression. He also has diabetes. He gets muscle spasms in his back and his ribs hurt. It is hard for him to breathe. He had pain in his shoulder. His neck is tight and he can't turn it sometimes. He has had swollen knees. His medications do not help him.

11

He has been clean since 2010, he did 6 months of rehab and 6 months of jail for possession of meth. He used meth to numb his back pain. His family gave him ultimatums about meth use. He last drank alcohol a couple of months past. He did not pay his bill so his BiPap machine was taken. He is tired a lot. Mental health is not calling him back now. He is not able to keep up with his college instructors. If he had an easy job, he would miss 1/2 week every week. He would need extra breaks every half hour for 5 to 10 minutes to compose himself (Testimony).

\* \* \*

The claimant is now age 37 and has one prior application. He alleges extreme limitations that are not commensurate with the objective medical records. As an example, he complains of intense neck pain, but his cervical MRI scan was normal.

He has not been fully compliant with his mental health treatment at Butte Mental Health with missed appointments and noncompliance with his medications (Exhibits 4A, 31F). He has not been consistent in reporting his sobriety status. In February of 2011, he told Dr. [] that he had been sober for one year (Exhibit 34F/3). At the hearing, he testified to being sober for a couple of months (Testimony). Additionally, he has a history of meth abuse with a criminal record (Exhibit 34F/3).

Although the claimant alleges severe chronic pain and dysfunction, his diagnostic studies do not support his allegations. The MRI of his cervical spine was negative (Exhibit 1F/10). He has had negative lumbosacral x-rays (Exhibit 21F). Studies of his knees have only shown mild degenerative changes with minimal levels of effusion (Exhibit 1F/1, 3).

According to Dr. Weesner, he did not appear to respond to questions in an honest and open manner and there was evidence of exaggeration or symptoms (Exhibit 34F/5). Further, he testified that he attends Butte Community College (Testimony).

\* \* \*

In July of 2012, the State agency noted that a splint was not prescribed by any doctor. The claimant wore it for comfort only. He did not mention it to his treating physician.

He testified that mental health is not calling him back but he has been noncompliant with treatment in the past, although improvement in mental functioning was anticipated (Exhibit 31F, Testimony).

He testified to having problems sleeping but he did not pay the bill to keep his BiPap machine that treats his sleep apnea (Testimony).

He testified that his ribs hurt and it is hard for him to breathe, but there is no objective evidence to support that testimony.

1  Plaintiff argues that the ALJ erred by referencing his sobriety status, Dr. Weesner's finding that
2  plaintiff was exaggerating, and his attendance at community college.

3  The court finds no error. As indicated above, the ALJ may cite an unexplained
4  failure to seek treatment or to follow a prescribed course of treatment. See Smolen, 80 F.3d at
5  1284. In this case, the ALJ noted that plaintiff had missed appointments at Butte County Mental
6  Health and had not taken his medications as prescribed. Moreover, as the ALJ noted, diagnostic
7  studies have been largely unremarkable and showed no abnormalities, undermining plaintiff's
8  allegations of totally disabling physical symptoms. Finally, as noted in Dr. Weesner's report, see
9  CAR 588-593, results of objective testing revealed that plaintiff "did not appear to respond to
10 questions in an honest and open manner" and was exaggerating his symptoms. These all
11 provided valid bases supported by substantial evidence of record for finding plaintiff's
12 statements and testimony not credible.

### E. Lay Witness Evidence

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. The ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar. See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

///

In this case, the record contained lay witness statements from plaintiff's former girlfriend, Carrie Gomez, as well as his brothers, Uriel Hernandez and Rev. Othoniel Hernandez. As to these witnesses, the ALJ stated:

> In reaching this decision, the undersigned has also considered the November 2011 letters from the claimant's girlfriend, Carrie Gomez (Exhibit 9F). Also considered was the January 2012 Third Party Function Report completed by the claimant's girlfriend, Carrie Gomez (Exhibit 4E). Ms. Gomez indicated that the claimant had trouble sleeping and needed help dressing himself. She monitored his medications. He could not follow written or oral direction. He could not stand for long period. He did no chores or yard work. He could walk, ride in a car, and drive a car. He did not go shopping except to sit in the car. He could not manage money. He spent his days watching TV. He no longer socialized. He did talk on the phone and went two blocks to pick up children from school. He walked for 5 to 7 minutes maximum. He used crutches and a brace. He could not pay attention very long. He could not follow directions. He had anxiety attacks when stressed (Exhibit 4E).
>
> The claimant's brother, Uriel Hernandez, also provided a letter of support in November 2011. His brother noted he saw the claimant at least twice a week and sometimes more. He described the claimant's pain and physical dysfunction (Exhibit 9F).
>
> Also in January of 2012, the claimant's brother, the Reverend Othoniel Hernandez, wrote a letter in support of this claim. His brother lives in South Gate, CA. His brother spoke with the claimant on a regular basis and was *told* of the claimant's severe pain. According to his brother, the claimant's disability had affected him both physically and emotionally (Exhibit 10F).
>
> The undersigned accords minimal evidentiary weight to the above third party statements. These statements are primarily based upon the claimant's subjective complaints. Ms. Gomez's statements are more credible as she lived with the claimant for years. However, even her statements are not supported by the objective medical evidence. Her description of the claimant was too extreme given the objective medical evidence and mild findings in his diagnostic studies.

Plaintiff argues:

> . . .The ALJ assigned "minimal evidentiary weight" to the testimony because it was, supposedly, "primarily based on the claimant's subjective complaints" (AR 19). The ALJ's assertion is false. Each witness described their first-hand personal observation of the objectively manifested physical, cognitive, and emotional difficulties experienced by Mr. Martinez and described in detail the limitations they had personally observed these impairments imposed on his day-to-day functionality.

1 Plaintiff also argues that, to the extent the ALJ cited inconsistency with the objective medical
2 evidence, "the ALJ failed to specifically identify the 'overstatements' and identify specific
3 medical records contradicting them."

4 As to plaintiff's brother, Rev. Othoniel Hernandez, the court finds plaintiff's
5 argument unpersuasive because, as the ALJ noted, his statement was based entirely on what he
6 was told about plaintiff's limitations. Thus, as the ALJ concluded, this statement is based on
7 subjective complaints and not the witnesses' own observations. As to plaintiff's other brother,
8 Uriel Hernandez, and plaintiff's former girlfriend, Ms. Gomez, those statements were similar to
9 plaintiff's own testimony and statements and were properly rejected by the ALJ for the same
10 reasons as those provided for rejecting plaintiff's statements. See Valentine, 574 F.3d at 694.

### F. Title II Claim

12 Plaintiff sates that he filed two claims in 2011 – one seeking disability insurance
13 benefits under Title II of the Social Security Act, and another seeking supplemental security
14 income under Title XVI. Plaintiff argues that the ALJ erred by not considering his Title II claim
15 for disability insurance benefits. According to plaintiff: "This is not merely a typographical
16 oversight; the decision nowhere mentions Title XVI and ALJ French entirely failed to develop
17 the record in any way as to, *inter alia*, whether Mr. Martinez was disabled prior to his date last
18 insured of March 31, 2006."

19 This argument lacks merit. As defendant notes, plaintiff never requested
20 reconsideration of the administrative denial of his Title II claim. See CAR 101-07, 115-17.
21 Additionally, plaintiff's counsel acknowledged at the administrative hearing that this case
22 involved plaintiff's Title XVI claim only. Specifically, counsel stated: "Your Honor, it's a Title
23 XVI because of the less than SGA work attempts over a period of years."

24 / / /
25 / / /
26 / / /

## IV. CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiency noted above, specifically re-evaluation of Dr. Tendall's opinions.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 21) is granted;
2. Defendant's cross motion for summary judgment (Doc. 33) is denied;
3. This matter is remanded for further proceedings consistent with this order; and
4. The Clerk of the Court is directed to enter judgment and close this file.

DATED: May 1, 2018

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE